**The document below is hereby signed.** Dated: November 6, 2012.



_____
**S. Martin Teel, Jr.
U.S. Bankruptcy Judge**

```
             UNITED STATES BANKRUPTCY COURT
              FOR THE DISTRICT OF COLUMBIA
```

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| McWADE PROPERTIES, LLC, | ) | Case No. 12-00634 |
| | ) | (Chapter 11) |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| McWADE PROPERTIES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. |
| | ) | 12-10038 |
| INDUSTRIAL BANK, | ) | |
| | ) | **Not for Publication in** |
| Defendant. | ) | **West's Bankruptcy Reporter** |

MEMORANDUM DECISION RE OPPOSITION TO
NOTICE OF REMOVAL AND MOTION TO DISMISS AMENDED COMPLAINT

This is an action removed from the Superior Court of the District of Columbia. The plaintiff, McWade Properties, LLC, filed an Opposition to the Notice of Removal, and the defendant, Industrial Bank, has filed a motion to dismiss McWade's amended complaint. For reasons stated in more detail below, the court will strike the opposition to the notice of removal and deny in part and grant in part the motion to dismiss.

I

McWade Properties filed a voluntary petition under Chapter 11 of the Bankruptcy Code (11 U.S.C.) one week after filing its original complaint against Industrial Bank in the Superior Court, and only one day after filing its amended complaint.  Industrial Bank filed its notice of removal less than one week after McWade filed its voluntary petition.

McWade Properties has filed a document styled as an opposition to the notice of removal contending: (1) that removal, while permissible, is not mandatory, and that the examination of issues raised in the complaint is not essential to the proper adjudication of the Chapter 11 case; (2) that for purposes of 28 U.S.C. § 1334(e)(1), the debtor's "property" in the bankruptcy case is McWade's real property located at 1301-1309 Pennsylvania Avenue, SE, whereas McWade's $600,000 claim for damages against Industrial Bank is not "'property' at this point in the process"; (3) it is speculative to say that the outcome of this case will have a direct impact on the bankruptcy case because McWade anticipates having sufficient assets to pay all of its creditors in full; (4) this is not a core proceeding as alleged by Industrial Bank in its notice of removal; and (5) the notice of removal is prematurely filed given that McWade has yet to even file schedules and in consideration of McWade's belief that it will have a plan confirmed before December 5, 2012.

McWade chose to file an opposition to the notice of removal rather than filing a motion to remand.  If McWade sought relief in the form of remand, it was required to file a motion and to give Industrial Bank an opportunity to oppose such a request.  Even if McWade had styled its opposition as a motion for remand, however, the filing does not challenge the effectiveness of Industrial Bank's notice of removal, it does not challenge the jurisdiction of this court, and it fails to articulate any legal or equitable grounds adequate to support a remand.  McWade does not assert that the Superior Court is better equipped to adjudicate this dispute or other grounds why this court should defer to the Superior Court and abstain from hearing these proceedings.  As a procedural matter, McWade has failed to pursue remand, and as a practical matter, McWade has failed to demonstrate why remand is warranted.  The notice of removal is effective, and McWade's opposition shall be stricken accordingly.

II

When deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must accept the well-pled facts of the complaint, and the court should "constru[e] the complaint liberally in the plaintiff's favor with the benefit of all reasonable inferences derived from the facts alleged . . . . *Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169 (D.C. Cir. 2006).  A complaint will survive a motion to dismiss if it contains

sufficient factual allegations, accepted as true, "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The amended complaint is framed as a one-count complaint for intentional interference with business relations. McWade's demand for relief seeks damages as well as an accounting for all monies paid to Industrial Bank by McWade from June 1, 2005, to present.[1]

In the amended complaint, McWade alleges that Industrial Bank served McWade with a notice of foreclosure asserting a past due balance of $2,137,371.12, arising under a note secured by the debtor's real property.[2] McWade, however, has insisted for more than a year that the overdue balance asserted by Industrial Bank in the foreclosure notice is inaccurate, and has made several

---

[1] The amended complaint also refers to Exhibits I through IV, but does not attach those documents. The exhibits were attached to the original complaint, which sought injunctive relief rather than damages.

[2] Although not directly alleged, the court infers from allegations 3, 4, 7, and 16 that Industrial Bank is further alleged to be the holder of a note or notes secured by McWade's real property, which property is the subject of the attempted foreclosure.

4

requests for an accounting, including a written request sent to Industrial Bank by express mail on September 5, 2012. Industrial Bank has failed to provide McWade with the requested accounting, and did not respond to the September 5, 2012 written request.[3] By failing to provide an accounting and accurate pay off figures, Industrial Bank made it impossible for McWade to accept offers to sell the property, and delayed McWade's ability to cut its costs and negotiate lease back provisions.

On Friday, September 7, 2012, and without authority to attach advertisements to McWade's building, agents of Industrial Bank attached to McWade's building two large placards and an even larger red and yellow banner with the words "Bank Auction" written on them. This caused a disruption to McWade's business. According to the amended complaint, Industrial Bank placed these signs on McWade's property notwithstanding that it knew that McWade was in active negotiations for the sale of the property, and knew or should have known that the placement of the signs would have a negative impact on those negotiations. The complaint further alleges that Industrial bank knew or should have known that the managing member of McWade operates a law office on the property and knew or should have known that the

---

[3] The notice of foreclosure also states that Industrial Bank's authority for the foreclosure sale is found in a security instrument recorded on February 8, 2012, but McWade alleges that it did not sign and has no knowledge of the referenced instrument.

5

placement of the signs would have a negative impact on his business.

Finally, the complaint alleges that Industrial Bank met with investor Robert Taylor and agent Brian Stutson and discussed the sale of the note. McWade suspects, but does not go so far as to allege outright, that proprietary information was shared at this meeting. Mr. Stutson subsequently came to McWade and indicated that he was referred to McWade by Industrial Bank. He presented a letter of intent to purchase the property.[4] After several months, the letter of intent fell apart, and in the interim, McWade had lost several months of valuable marketing time. Shortly thereafter, an executive vice president of Industrial Bank sent a letter to McWade distancing the bank from Mr. Taylor and the letter of intent, and on that same date, Industrial Bank's attorney sent McWade a letter accelerating the note that is the subject of the amended complaint. The events relating to Mr. Taylor and Mr. Stutson, including their communications with the bank and dealings with McWade, caused McWade to lose valuable marketing time and not to pursue other offers to purchase the

---

[4] In paragraph 14 of the complaint, McWade alleges that Mr. Stutson came to McWade and indicated that he was referred by the defendant and presented a letter of intent to purchase the property. The paragraph goes on to allege that the "Defendant subsequently signed by the Defendant." This is obviously a typographical error, and the court suspects, but cannot be certain, that McWade intended to allege that the letter of intent was subsequently signed by the defendant.

property.

A.

To state a claim for intentional interference with business relations under District of Columbia law, McWade must allege: (1) the existence of a valid contractual or other business relationship or expectancy; (2) the defendant's knowledge of the relationship or expectancy; (3) intentional interference with that relationship by the defendant which induces or causes a breach or termination of the relationship or expectancy, and (4) resulting damages.  *McNamara v. Picken*, 2012 WL 76176, at *3 (D.D.C. Jan. 11, 2012*); Onyeoziri v. Spivok*, 44 A.3d 279, 286 (D.C. 2012) (quoting *NCRIC, Inc. v. Columbia Hosp. for Women Med. Ctr., Inc.*, 957 A.2d 890, 900 (D.C. 2008).  Additionally, "the defendant's interference must be improper, [and] [c]ompetitive activity does not by itself constitute intentional interference with prospective business advantage, unless accomplished by wrongful or improper means, such as fraud."  *Furash & Co., Inc. v. McClave*, 130 F. Supp.2d 48, 56 (D.D.C. 2001).  Under District of Columbia law, a claim for intentional interference with business relations can be based upon tortious interference with existing contractual relationships as well as with prospective business relationships.  *See Tel. & Data Systems, Inc., v. Am. Cellular Network Corp.*, 966 F.2d 696 (D.C. Cir. 1992).  If the relationship in question is prospective in nature, the "plaintiff

7

must allege business expectancies, not grounded in present contractual relationships, but which are commercially reasonable to expect." *McNamara,* 2012 WL 76176 at *3 (quoting *Sheppard v. Dickstein, Shapiro, Morin & Oshinsky*, 59 F. Supp.2d 27, 34 (D.D.C. 1999).[5] Damages for a claim for intentional interference with prospective business relations may include "the pecuniary loss of the benefits of the . . . prospective relations . . . [and] consequential losses for which the interference is the legal cause." *McNamara,* 2012 WL 76176 at *3 *(*quoting *AMTRAK v. Veolia Transp. Servs.*, 592 F. Supp.2d 86, 100 (D.D.C. 2009)).

McWade's complaint can be divided into three categories of alleged wrongdoing on Industrial Bank's part, each based upon different facts and resulting in a distinct form of alleged harm.

---

[5] As explained in *Behrend v. Bell Tel. Co.*, 363 A.2d 1152, 1160 (Pa. Super. Ct. 1976):

> The tort of intentional interference with business requires, as a basis, that a business relationship be proved with some degree of specificity, at least to the point that future profit be a realistic expectation and not merely wishful thinking. It is true that where a prospective advantage is alleged, the plaintiff need not demonstrate a guaranteed relationship because 'anything that is prospective in nature is necessarily uncertain. We are not here dealing with certainties, but with reasonable likelihood or probability. This must be something more than a mere hope or the innate optimism of the salesman.'

8

1.

<u>Failure to Provide an Accounting or Pay Off Amount</u>

In its amended complaint, McWade alleges that Industrial Bank failed to provide an accounting and a pay off amount with respect to the note, which made it impossible for McWade to accept offers to sell the property and impossible to negotiate lease back provisions.  The first element that must be alleged to establish a claim for intentional interference with business relations, however, is the existence of a valid contractual relationship or prospective business relationship.  Although McWade alleges that the bank's conduct made it "impossible for the debtor to accept offers to sell the property," McWade fails to allege the existence of any actual offers, and likewise fails to allege that such offers were, in fact, declined as a result of the bank's failure to provide an accounting and accurate pay off figures.  Accordingly, with respect to the bank's alleged failure to provide an accounting or an accurate pay off amount, McWade has failed adequately to allege the existence of a prospective business relation with which the bank's conduct interfered, a necessary element to any claim for intentional interference with business relations.  Similarly, McWade failed to allege that the bank knew of any purchase offers (the existence of which is, itself, not alleged).  The existence of some identifiable prospective business relationship, as well as Industrial Bank's

9

knowledge of that prospective business relationship, are both necessary allegations to state a claim for intentional interference with business relations.  Finally, even if McWade had adequately alleged the existence of valid prospective business relations (which it did not), McWade has not alleged that Industrial Bank intended, by its failure to provide an accounting or pay off figures, to interfere with such prospective relations.  *See Bennett Enters., Inc. v. Domino's Pizza, Inc.*, 45 F.3d 493, 499 (D.C. Cir. 1995) ("As its name would suggest, intentional interference requires an element of intent.  Further, a general intent to interfere or knowledge that conduct will injure the plaintiff's business dealings is insufficient to impose liability." (internal quotations omitted)).  For all of these reasons, the court finds that McWade has failed to state a claim for intentional interference with business relations to the extent McWade seeks to base that claim upon Industrial Bank's failure to provide an accounting and pay off figures.

It may be that Industrial Bank was contractually bound under the note to provide McWade with an accounting or pay off amount on demand.  And if so, and despite the label attached to it by McWade, McWade's claim may sound more properly in contract than in tort.  Although McWade's labeling of its claim as a claim for intentional interference with business relations does not prevent the court from finding that McWade has actually stated a claim

10

for breach of contract, *see Rynn v. Jaffe*, 457 F. Supp.2d 22, 25 (D.D.C. 2006) (finding that a claim labeled as a claim for abuse of process was instead a claim for malicious prosecution), the complaint fails to allege that the bank was contractually obligated to provide the requested accounting and pay off figure, and as such, the complaint cannot be read as stating a claim for breach of contract.[6]

2.

The Unauthorized Posting of Bank Sale Signs on the Property

The next category of conduct alleged by McWade is that, without authorization, agents of Industrial Bank posted large signs on the property announcing that the property was the subject of a bank sale.  This is alleged to have "[c]aused disruption to Plaintiff's business."  It is likewise alleged that "Defendant knew that Plaintiff is in active negotiations for the sale of the subject property and knew or should have known that the placement of the 'bank sale' signs would have a negative impact on those negotiations."  Finally, McWade alleges that Industrial Bank knew that McWade's managing member maintained a

---

[6] McWade's opposition to the motion to dismiss contends that Industrial Bank's failure to provide an accounting and a proper pay off amount constituted a violation of local law.  In making this assertion, McWade cites to *Bank-Fund Staff Fed. Credit Union v. Cuellar*, 639 A.2d 561, 563-64 (D.C. 1994).  That case, and the statutory provision at issue, D.C. Code 1981, § 45-715.1, addressed the requirements associated with notices of foreclosure as to residential real property, not commercial real property.

law office on the property and that the placement of the signs would negatively impact his business.

As a preliminary matter, the court notes that McWade cannot seek relief for damages visited solely upon a non-debtor entity, and this alleged harm cannot be relied upon to supply the damages element of McWade's claim.  McWade also alleges, however, that the bank disrupted *McWade's* business and that the bank should have known that the placement of the signs would have a negative impact on McWade's active negotiations for the sale of the property.  Significantly, however, McWade does not allege that the placement of the signs *actually* had a negative impact on those negotiations, and if so, what that negative impact was.  And although McWade alleges that the placement of the signs caused a disruption to McWade's business, McWade failed to allege "any actual loss of business, time, or money as a result of the alleged interference."  See *McNamara,* 2012 WL 76176, at * 3.  McWade has failed adequately to allege the damages element of a claim for intentional interference with business relations to the extent the debtor's claim is based upon Industrial Bank's unauthorized placement of signs on the debtor's property.

Moreover, McWade failed adequately to allege a prospective business relationship with a third party that it reasonably expected to result in a contract or economic advantage, a necessary element of a claim for intentional interference with

business relations.  Instead, McWade alleges the existence of "active negotiations" without supplying any supporting allegations that might shed light on the nature of those negotiations.  The complaint does not identify who was a party to the negotiations, it does not indicate how far the negotiations had progressed, and essentially fails to give any meaning to the word negotiations.  And "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions and a formulaic recitation of the elements of a cause of action will not do . . . ."  *Twombly*, 550 U.S. at 555.  The plain statement required under Rule 8(a)(2) must "possess enough heft to show that the pleader is entitled to relief."  *Id.* at 556 (discussing how some allegations require "further factual enhancement" to render the plaintiff's alleged entitlement to relief plausible).  The naked assertion of "negotiations" without further factual elaboration tells the court almost nothing about the prospective business relations being alleged.  Absent additional factual context, negotiations could simply mean early-stage discussions, and the court is not required to infer from the use of this vague term that the negotiations being alleged are of the type as to which McWade had a reasonable expectation of gaining an economic advantage.  The

complaint, in its current form, fails adequately to allege a prospective business relation with which Industrial Bank may have interfered in the posting of signs on McWade's property.

Finally, even if McWade's allegation of active negotiations was sufficient to allege the existence of a valid prospective business relationship, nowhere has McWade alleged that Industrial Bank's placing of signs on the property was *intended* to harm the debtor's negotiations with prospective purchasers.  *See Bennett Enters., Inc.*, 45 F.3d at 499 (explaining that intent is a necessary element of a claim for intentional interference).

McWade's labeling of its claim as a claim for intentional interference with business relations does not prevent the court from finding that McWade has instead stated a claim for trespass. *See Rynn,* 457 F. Supp.2d at 25 (claim labeled as a claim for abuse of process was instead a claim for malicious prosecution). "Under District of Columbia law, '[a] trespass is an unauthorized entry onto property that results in interference with the property owner's possessory interest therein.'" *Dixon v. Midland Mortg. Co.*, 719 F. Supp.2d 53, 56 (D.D.C. 2010); *Sarete, Inc. v. 1344 U St. Ltd. P'ship*, 871 A.2d 480, 490 (D.C. 2005) (quoting Richard R. Powell, Powell on Real Property § 64A.02[1] at 64A-16 (Michael A. Wolf ed., 2000)).  The complaint alleges that agents of the bank posted signs on McWade's private property without authorization.  Although McWade has not alleged that the

14

unauthorized posting of signs on its property caused actual damage to McWade's building or property, and the court has found that the damages otherwise alleged are insufficient to satisfy the damages element of a claim for intentional interference with business relations, under District of Columbia law, plaintiffs can recover nominal damages for a claim of trespass. *See Decker v. Dreisen-Freedman, Inc.*, 144 A.2d 108, 110 (D.C. 1958). The court therefore concludes that McWade has adequately alleged a claim of trespass against the bank, and that claim will survive the motion to dismiss.

3.

Industrial Bank's Involvement With Third-Party
Prospective Purchasers and Alleged Interference
With McWade's Pursuit of Alternative Offers

The third and final category of conduct complained of by McWade involves Industrial Bank's alleged discussions with investor Robert Taylor and agent Brian Stutson concerning the note secured by McWade's property, a subsequent letter of intent from Stutson to McWade to purchase McWade's property, and the ultimate failure of Stutson to proceed under the letter of intent. Specifically, McWade alleges that Industrial Bank discussed the note with Mr. Taylor and Mr. Stutson in early 2011, and McWade "suspects" that Industrial Bank revealed proprietary information during those discussions. On May 19, 2011, Mr. Stutson allegedly presented to McWade a letter of intent seeking

15

to purchase the property, indicating that he had been referred to McWade by Industrial Bank.  Several months later, the letter of intent "fell apart."  On June 8, 2011, an executive vice president of Industrial Bank sent to McWade a letter distancing the bank from Mr. Taylor and the letter of intent, and on that same date, an attorney for Industrial Bank sent to McWade a letter accelerating the note.  McWade alleges that this series of events cost McWade valuable time and caused McWade not to pursue other offers to purchase the property.

As already recited above, to state a claim for intentional interference with business relations under District of Columbia law, McWade must allege: (1) the existence of a valid contractual or other business relationship or expectancy; (2) the defendant's knowledge of the relationship or expectancy; (3) intentional interference with that relationship by the defendant which induces or causes a breach or termination of the relationship or expectancy, and (4) resulting damages.  *McNamara,* 2012 WL 76176); *Onyeoziri,* 44 A.3d 279.

As to the first element of a claim for intentional interference with business relations, McWade adequately alleges the existence of a valid contractual or other business relationship with Mr. Stutson.  In contrast to vague allegations of negotiations that appear elsewhere in the amended complaint, here McWade alleges the existence of a letter of intent to

16

purchase, an allegation that elevates this relationship, at least for pleading purposes, beyond the realm of mere speculation and high hopes. The existence of a letter of intent to purchase renders it commercially reasonable for McWade to expect the relationship to result in a sale, and in evaluating the sufficiency of the complaint under Rule 12(b)(6), the court finds that the amended complaint adequately alleges this element of a claim for intentional interference with business relations.

McWade also adequately alleges that the bank had knowledge of McWade's business dealings with Mr. Stutson. McWade alleges that the bank discussed McWade's note with Mr. Stutson prior to Stutson's presentation of the letter of intent to McWade. It also alleges that Stutson indicated that the bank referred him to McWade. Finally, McWade alleges that Industrial Bank referenced the letter of intent in communications with McWade. For purposes of surviving a 12(b)(6) motion to dismiss, these allegations are sufficient to satisfy the knowledge element of a claim for intentional interference with business relations.

Where McWade's claim fails, however, is the third element of a claim for intentional interference with business relations, which requires the debtor to allege that Industrial Bank *intentionally* interfered with McWade's business relationship with Stutson, thereby *inducing or causing* a breach or termination of the relationship or expectancy. McWade adequately alleges that

17

the relationship between McWade and Stutson was either breached or terminated, but the complaint fails to allege any causal connection between Industrial Bank's conduct and Stutson's failure to purchase the property.[7] The complaint likewise fails to allege any intent on the part of the bank to interfere with the business relationship between Stutson and McWade, a necessary element to a claim for intentional interference with business relations. *See Bennett Enters., Inc.,* 45 F.3d 493. McWade having failed to allege a critical element of its claim, McWade cannot rely on these events to support a claim for intentional interference with business relations against Industrial Bank.

### III

Separate orders follow.

[Signed and dated above.]

Copies to: All counsel of record; Recipients of e-notification of filings.

---

[7] In its opposition to the motion to dismiss, McWade states that "[b]ut for Defendant's meeting and sharing of inside and possibly confidential information with Mr. Taylor and Mr. Stutson, Plaintiff would have continued negotiations with other purchasers and may have closed the sale." No such causal connection is alleged in the amended complaint, and an opposition brief cannot be used to remedy a pleading deficiency. *See Coleman v. P.B.G.C.*, 94 F. Supp.2d 18, 24 n. 8 (D.D.C. 2000) ("It is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.") (citations omitted).